UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC and DEBORAH EBERTS,

        Plaintiff,

v.                                          Case No. 05-C-527

TORGE GODERSTAD, et al.,

        Defendants.

**DECISION AND ORDER**

This diversity action is presently before me on the motion of intervening defendant American Family Insurance, which seeks summary judgment on the issue of coverage and a finding that is has no continuing duty to provide a defense for the defendants in this action. Defendants Torge and Svetlana Goderstad have also filed a motion for leave to file a crossclaim against American Family seeking reformation of the relevant insurance policies. For the reasons given herein, American Family's motion will be granted and the Goderstads' motion to file a crossclaim will be denied.

**I. BACKGROUND**

The case arises out of the Eberts' purchase of an expensive and historic Neenah home from the Goderstads. Broadly speaking, the Eberts claim that the Goderstads failed to disclose major defects in the house and that, instead of making needed repairs, the Goderstads made only cosmetic

repairs in order to make the house marketable. They also assert the Goderstads affirmatively misrepresented the condition of certain parts of the house. Because the coverage analysis at this stage turns on the allegations contained in the amended complaint, I will set forth several paragraphs below.

> 9. On April 17, 2003, the Goderstads prepared a Real Estate Condition Report denying knowledge or notice of defects in the roof, the plumbing system, the structure of the property, the presence of potentially hazardous or toxic substances on the premises or any other defects affecting the property.
>
> 10. The Goderstads represented to the Eberts on several occasions during the negotiations for the sale of the home that they had taken very good care of the home and kept it well-maintained. Suzanne Goderstad told the Eberts that they had spent a total of $2.2 million on the renovation, decoration and upkeep of the home during the course of their ownership.
>
> 11. While the Goderstads acknowledged awareness of defects in the basement or foundation (including cracks, seepage and bulges), they did not disclose the presence of a drainage problem on the east side of the back addition or the water intrusion into the below-ground level exercise room as a result of the drainage problem.
>
> 12. The Goderstads also acknowledged prior water leaks on the third floor of the historic portion of the home after being asked about a water stain by the Eberts, but advised the Eberts that the stains were old and not a problem.
>
> 13. No roof problems were disclosed to the Eberts.

(Am. Compl. ¶¶ 9-13.)

Upon moving in, the plaintiffs experienced several major problems with the house. These included a leaky roof, which damaged the master bedroom (Am. Compl. ¶ 14), as well as plumbing problems, which caused water damage to the garage (Am. Compl., ¶ 16.) The exterior of a recent addition to the home also leaked due to faulty installation, adding to the moisture issues the house faced. (Am. Compl. ¶¶ 24-25.) The Goderstads' failure to disclose these facts was a key factor in the plaintiffs' decision to purchase the house: "The Eberts justifiably relied on the representations

2

and disclosures made by the Goderstads regarding the lack of defects to the home's roof, plumbing system, lot drainage, water intrusion, moisture, mold, structure and EIFS system in deciding to purchase the home." (Am. Compl. ¶ 28.) The amended complaint also alleges that the Eberts' lack of knowledge about certain conditions caused the house to sustain damage in addition to the hidden damage and defects that already existed at the time of purchase. (Am. Compl. ¶¶ 14, 16.)

The Goderstads had four policies of insurance from American Family: a homeowners' policy, a personal liability policy, a policy for National Plastics Trading Co., their home-based business, and a policy covering two unrelated properties the Goderstads operated as a limited liability company or partnership. (Booth Aff., Ex. A-D.) The relevant portions of the applicable policies are not materially different.

## II. ANALYSIS

The amended complaint brings seven counts: (1) breach of contract; (2) intentional misrepresentation; (3) statutory misrepresentation; (4) strict liability misrepresentation; (5) fraudulent misrepresentation; (6) negligent misrepresentation; and (7) negligence. The first six claims are based on the Goderstads' knowledge of defects and either their failure to disclose those defects or their affirmative denials that such defects existed. The seventh claim alleges the Goderstads were negligent in failing to inspect their house to discover defects and that they breached a duty of care owed by sellers of homes.

### 1. Occurrence

The policies at issue provide coverage only if there is an "occurrence," which itself is defined under the policies as an "accident." American Family argues that regardless of how the

claims are styled, the Goderstads' misrepresentations or failures to disclose cannot be deemed "accidents." The defendants concede that affirmative misrepresentations do not constitute accidents, but posit that negligent failures to disclose information *can* be occurrences.[1]

The issue was addressed squarely by the Wisconsin Supreme Court in *Everson v. Lorenz,* 2005 WI 51, 695 N.W.2d 298 (Wis. 2005), a case which all parties agree is crucial to the outcome in this case. There, the purchaser of a lot sued the lot's developer for misrepresentation and breach of contract stemming from the developer's disclosure that no portion of the property lay within a 100-year flood plain. 695 N.W.2d at 301. Having learned that part of the land was in fact located in a flood plain, the purchaser alleged that his property was unbuildable. The supreme court found that the seller's misrepresentations–whether negligent, intentional, or otherwise–could not constitute accidents (i.e., occurrences) under the applicable policy. The court observed that to be liable, the seller needed to utter a false statement, which was a volitional act. Even if the statement was mistaken or negligent, the act of making the misstatement was not, strictly speaking, an accident. "[W]here there is a volitional act involved in such a misrepresentation, that act removes it from coverage as an 'occurrence' under the liability insurance policy." *Id.* at 305.

American Family argues that the misstatements and failures to disclose here were exactly like those discussed in *Everson*. However the claims in the amended complaint are styled, the actions complained of involve either affirmative misstatements or failures to disclose, or (in the

---

[1] The plaintiffs do not explicitly concede that the misrepresentation claims are not covered, but they make no argument that *Everson*, discussed *infra*, does not apply to the question of whether the misrepresentations are "occurrences" under the policies. Their discussion of the first six claims is thus limited to causation, a separate issue.

4

negligence claim) breaches of duties to investigate and/or disclose. These are just as volitional as the disclosures at issue in *Everson*, and therefore cannot constitute an "accident."

The defendants and plaintiffs accept that *Everson* precludes coverage for most of the complaint, namely, the claims based on misrepresentations or breach of contract. They focus instead on the "negligence" claim (Count VII). According to the plaintiffs, the Goderstads negligently failed "to ascertain the true condition of their home or to inspect their home for defects prior to sale." (Pltf. Br. at 9.) This failure to inspect and/or disclose, they assert, lacks any volitional component and as such can be deemed an "accident." The plaintiffs analogize this case to *Doyle v. Engelke,* 580 N.W.2d 245 (Wis. 1998). At issue in *Doyle* were claims that the defendant was negligent in its supervision of its employees. The court concluded that such claims could constitute an "accident" inasmuch as the negligent failure to supervise was an unintentional occurrence. *Id.* at 250.

American Family eschews the debate over whether a claim for "negligent failure to inspect" could constitute an "accident" under the policies. Instead, it chooses to attack the merits of the claim itself. It argues that there is simply no such thing as a claim for negligent failure to inspect a house on the part of the homeowners because the doctrine of *caveat emptor* would bar any such recovery. In other words, even if it is proven that the Goderstads "accidentally" failed to inspect their house properly–a claim arguably covered by the policies–no relief is available because the policies only cover claims for which the insureds can become "legally liable."

Of course, the fact that the underlying claim may lacks merit is ordinarily not a defense to the insured's claim that his insurer has a duty to defend the claim. *See Wausau Tile, Inc. v. County Concrete Corp.,* 593 N.W.2d 445, 459 (Wis. 1999) ("the duty to defend hinges on the nature, not

5

the merits, of the claim.") As the Wisconsin Supreme Court put it, "[i]t is the nature of the claim alleged against the insured which is controlling even though the suit may be groundless, false or fraudulent. Consequently, 'an insurer may have a clear duty to defend a claim that is utterly specious because, if it were meritorious, it would be covered.'" *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.,* 2003 WI 33, 660 N.W.2d 666, 674 (Wis. 2003). But where there are multiple claims and the only arguably covered claim is without legal merit and can be summarily dismissed, summary judgment in favor of the insurer is appropriate. *See Wausau Tile, Inc.*, 593 N.W.2d at 459 ("Since we have already determined that Wausau Tile's negligence and strict liability claims against Medusa are barred by the economic loss doctrine, Travelers can have no duty to defend Medusa on those claims.").

Here, plaintiffs' negligence claim is clearly without merit. In essence, plaintiffs' claim is that the defendants breached their duty to inspect the home in order to ascertain what if any defects it may have had prior to selling it. (Am. Compt. ¶¶ 120-26.) But as American Family points out, there is no duty to inspect one's home before selling it. Wisconsin law does require a seller of real estate to disclose defects of which he or she has notice, but the required report specifically warns the buyer that it is "not a substitute for any inspections or warranties that the principals may wish to obtain." Wis. Stat. § 709.03. Absent a duty to inspect, there can be no claim for failing to do so. Accordingly, plaintiffs' claim for negligence is without merit and must be dismissed. With that claim gone and no duty to defend or indemnify its insureds on the remaining claims under its policy issued to the Goderstads, American Family is entitled to summary judgment as to all claims arising under that policy.

6

2. **Business Policies**

The plaintiffs also argue that the defendants' business liability policies provide personal injury coverage here. Specifically, they allege that the defendants' misrepresentations constitute "wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor." (Booth Aff., Ex. C at 16.) The theory is that because the house was damaged due to the defendants' misrepresentations, those misrepresentations constituted an invasion of the plaintiffs' right of occupancy.

The plaintiffs concede this is a somewhat novel theory, noting that there are no Wisconsin cases addressing the question. They do find support, however, in a Seventh Circuit case, *Pipefitters Welfare Educ. Fund. v. Westchester Fire Ins. Co.,* 976 F.2d 1037 (7th Cir. 1993). There, the defendants' failure to disclose the toxic contents of a transformer led to a spill of harmful PCBs, and the theory was that "Pipefitters' negligent failure to provide a warning that the transformer contained PCBs . . . led to the imposition on the Madison site of both a seal order, which restricted Arst's access thereto, and an environmental reclamation lien, which clouded its title." *Id.* at 1040. One could conclude, the court found, that this "impaired Arst's right to occupy its property." *Id.* Although the plaintiffs analogize the spill of PCBs in *Pipefitters* to the water and other damage their house suffered and note that both were caused by another's misrepresentations, the analogy does not hold up. The plaintiffs' house was not sealed off by the government, and there was no other restriction on their use of the property. The policy's definition speaks of "invasion of the *right* of private occupancy," not damage to the property that makes it less valuable or livable; the breadth of the plaintiffs' theory would transform the policies' coverage for personal injury into coverage for

7

property damage. At all times here the plaintiffs, unlike *Pipefitters,* maintained the legal right to occupy their property. The allegations of the amended complaint thus do not constitute wrongful "entry," "eviction," or "invasion of the *right* of private occupancy."[2]

In addition, an even more fundamental problem arises. The policies at issue that provide personal injury coverage are *business* policies–one policy covers a limited liability company that apparently owns properties in Elkhart Lake and Neenah; the other covers National Plastics Trading Co., the defendants' home-based business. (Booth Aff., Ex. C, D.) Neither of these businesses were involved in the misrepresentations alleged in this case: the amended complaint alleges that the defendants, individually, made misrepresentations and failed to disclose the property's condition, and the actual seller of the property was the Torge R. Goderstad and Svetlana S. Goderstad Joint Revocable Living Trust. The policies, of course, cover only those losses that the insureds themselves become legally obligated to pay, and the plaintiffs do not explain how either of the two insured businesses would be liable in this case. Accordingly, I conclude that the personal injury clauses do not provide coverage for the actions set forth in the amended complaint.

**3. Motion for Leave to File Reformation Crossclaim**

Defendants have also filed a motion for leave to file a crossclaim on the issue of reformation. They assert that the agent who sold them the insurance, James Early, promised them liability protection for all lawsuits, which was a concern of the defendants given the perception of wealth that their prominent house might foster in the community. They assert that they told Early of their specific concerns and that he mistakenly gave them inadequate coverage, which they assert is grounds for reformation of the insurance policies.

---

[2]The same analysis applies to the other cases the plaintiffs cite.

American Family disputes defendants' allegation that its agent made any such representations. Thus, it is clear that issues of fact remain outstanding as to what Early may have promised. American Family further argues, however, that defendants' allegations fail to state a claim for reformation as a matter of law and that for this reason leave to file should be denied. I agree. "To win the reformation of an insurance contract, the insured must prove that there was a prior oral agreement between the parties which, through mistake or negligence, the written policy does not express, although it was intended to so state." *International Chiropractors Ins. Co. v. Gonstead*, 238 N.W.2d 725, 728 (Wis. 1976). The suggestion that defendants requested and the insurer agreed that its policy would cover all conceivable lawsuits is too absurd to warrant further proceedings. If such a policy were contemplated, there would be no reason for any exclusions whatsoever. As American Family notes, no such coverage even exists. I decline to grant leave to file a cross claim that fails on its face. Accordingly, the motion to file a cross claim for reformation will be denied.

## III. CONCLUSION

For the reasons set forth above, Count Seven of plaintiffs' Amended Complaint is dismissed for failure to state a claim. As to the remaining claims, I conclude there is no coverage under any of the American Family policies before me.[3] The proffered cross claim for reformation of the

---

[3] Goderstad and National raise the issue of additional coverage they obtained when they moved to Colorado. They state that there "may" be coverage under those policies–they do not know yet–and raise the issue largely as a defense to dismissal. Summary judgment is the "put up or shut up time" of a lawsuit. *Johnson v. Cambridge Industries, Inc.,* 325 F.3d 892, 901 (7th Cir. 2003). Having failed to present any evidence that coverage may exist under policies issued by American Family after the sale of the property, Goderstad and National may not forestall summary judgment by claiming coverage might exist under other policies not before the court.

9

policies likewise fails to state a claim and leave to file will therefore be denied.  Accordingly, American Family's motion for summary judgment on all claims is granted.  Having found that it has no duty either to defend or indemnify its insured as to any of the claims remaining in the case, all claims against it are dismissed.

**SO ORDERED** this   10th   day of August, 2006.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge